UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:16CR89-PPS |
| | ) | |
| SERGIO GARCIA, SR., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

My order of May 18, 2020 [DE 198] denied defendant Sergio Garcia, Sr.'s Emergency Motion for Compassionate Release based on the COVID-19 pandemic. I was not persuaded that Garcia met the "extraordinary and compelling reasons" standard applicable to the request under 28 U.S.C. §3582(c)(1)(A)(i). Even presuming the accuracy of Garcia's proffered health history including respiratory ailments, none of which were reported to be particularly troubling for him at the present time, and given the lack of any reported cases of COVID-19 at the Federal Prison Camp Duluth where Garcia is housed, there was not an extraordinary and compelling basis to release Garcia.

Garcia has returned with a motion to reconsider, invoking the same considerations relied upon in his initial motion, along with the appearance of COVID-19 at FPC Duluth in late June. [DE 199 at 2; DE 206 at 4.][1] The parties dispute whether Garcia has

---

[1] Garcia's motion was filed *pro se* but is also supported by an attorney- drafted supplemental memorandum and reply brief, all of which I have carefully reviewed, along with the response of the government, a filing by Garcia's wife, Marisa, and a letter from Garcia's daughter submitted by email.

met the threshold requirement of exhausting administrative remedies. [DE 199 at 9; DE 207 at 6-7; DE 211 at 1-5.] Because I will deny Garcia's motion on the merits, I will not undertake to untangle the administrative record and the parties' arguments on the exhaustion issue.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to consider three elements: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. My earlier denial of Garcia's motion was predicated on his failure to meet the second of these requirements, and I continue to find that it is not met.

A defendant's unusual or extreme vulnerability to COVID-19 might be shown to warrant an early release from imprisonment based on the "extraordinary and compelling" standard. Nevertheless, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*,

2

954 F.3d 594, 597 (3rd Cir. 2020). In order to meet the applicable standard, a prisoner could demonstrate that "his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

An increase in the prevalence of COVID-19 at a defendant's prison is the kind of circumstance that could support reconsideration of the previous denial of compassionate release. But Garcia does not succeed in demonstrating that his placement at FPC Duluth exposes him to an especially high risk of COVID-19. In response to Garcia's assertions about the state of medical affairs at FPC Duluth, the government cites the BOP's report that there were no current cases of COVID-19 at the prison as of August 26, 2020, and that "the Duluth facility has only ever had a single case of COVID-19." [DE 207 at 20.] Three inmates who tested positive before being transferred to FPC Duluth were never in the general population while actively infected, and Garcia "has never been in the same building with an infected inmate." [*Id*. at 21.] In reply, Garcia does not dispute these representations. [DE 211 at 8.]

While I am sympathetic to Garcia's concern about potentially becoming infected with COVID-19 while in prison, Garcia has not demonstrated that his risk at FPC Duluth is significantly higher than if he were to be released, or that the facility is ill-equipped to provide appropriate medical treatment if he were to become sick. The risk

3

of contracting COVID-19 in prison is real, of course, but the situation in which Garcia is housed appears not to pose a particularly enhanced risk. The extremely low numbers of coronavirus cases indicate that prison authorities at FPC Duluth are successfully managing the facility against the pandemic.

Garcia also argues that he has health conditions that put him at greater risk of contracting COVID-19 or suffering complications if he does. Citing treatment by Dr. Dennis Streeter, DO, Garcia alleges that he "has a medical history for bronchitis and asthma," and also "suffers from sleep apnea and...gastroesophageal reflux." [DE 206 at 2.] The government's investigation of the medical record supporting Garcia's health claims succeeds in demonstrating that they are largely anecdotal, and that the doctor relied on by Garcia is a family friend who has a scant treatment history of Garcia without testing and without formal diagnoses of the conditions Garcia now claims. [DE 207 at 15-18.]

When interviewed by the government, Dr. Streeter reported that he had not seen Garcia as a regular patient. [DE 207-8 at 2.] The doctor is a vascular surgeon and not a respiratory specialist. [*Id*.] During an informal encounter in 2019, in which Sergio complained of snoring and a sore throat, the doctor suggested Garcia undergo a sleep study to determine whether he had sleep apnea (a recommendation he had also made in 2014 or 2015). Dr. Streeter had "never tested Sergio Garcia for respiratory illness, to include asthma," or for reflux. [*Id*. at 2-3.] The interview confirms that, as a family friend more than a treating physician, Dr. Streeter is generally aware of respiratory

4

symptoms Garcia has reported, but that he has not undertaken treatment of Garcia and has never diagnosed any particular respiratory illness, a matter outside his specialty. These admissions directly contradict the letter Dr. Streeter sent to the warden in April 2020 in support of a compassionate release for Garcia.  [DE 190-1 at 1.] The exaggeration if not downright falsity of Dr. Streeter's prior representations on Garcia's behalf severely undercut Garcia's claims that he currently suffers from sleep apnea or asthma or any other respiratory condition that increases his risks associated with COVID-19.

The discussion of Garcia's body mass index and the prison's requirement of further weight loss as a condition of receiving a CPAP machine for sleep apnea does not add appreciably to his attempt to demonstrate "extraordinary and compelling" reasons, given how common both sleep apnea and obesity are, and the fact that Garcia has never undergone a sleep study and so has not been diagnosed as having sleep apnea.  The lack of formal diagnoses of sleep apnea, asthma, or any current bronchitis is underscored by Garcia's own inmate request to be considered for compassionate release, in which he does not mention either sleep apnea or asthma, but merely claims to have doctor's records showing that he has *in the past* had bronchitis several times and also pneumonia, but "no other health conditions that I am aware of Thank God."  [DE 207-2 at 1.]  For all these reasons, the record does not support a finding that Garcia has medical conditions that, even in the midst of the pandemic, provide truly exceptional and compelling reasons to grant Garcia immediate release.

Garcia's invocation of release decisions in other cases is also unhelpful, as each case turns on its own particular circumstances, and Garcia is unable to show that any other defendant presented substantially similar circumstances in all relevant respects. This includes Garcia's son and co-defendant, Sergio Garcia, Jr., who reportedly has been released from prison during the pandemic. This was not a judicial decision, but an administrative one made by the Bureau of Prisons, applying whatever policy and criteria govern such matters, which likely included considerations such as Garcia, Jr.'s sentence of only 18 months' imprisonment (versus 70 months for Garcia, Sr.) and a different prison's capacity and plan for addressing the risks posed by the pandemic.

COVID-19 and the amendment to §3582(c)(1)(A) allowing defendants to file motions seeking a compassionate release do not authorize me to engage in a wholesale reconsideration of the sentence previously imposed. When I determined Garcia's term of imprisonment in the first instance (only 11 months ago), I gave careful consideration to the United States Sentencing Guidelines and the statutory sentencing factors in 28 U.S.C. §3553(a). Those considerations remain pertinent and still support the 70-month sentence I imposed. Garcia was at the head of a long-term conspiracy to commit mail fraud that involved hundreds of real properties and imposed a loss of between $500,000 and $1,000,000 on its principal victim, the Department of Housing and Urban Development. [DE 165 at 9.] At sentencing, I described the scheme as involving "rampant fraud" and a "drum beat of fraudulent behavior for a three- or four-year span

6

of time." [DE 165 at 26.] I sentenced Garcia to the bottom of the Sentencing Guidelines range of suggested incarceration which was 70 to 87 months.

The §3553(a) factors I weighed at that time, including the nature and circumstances of the offense, and the need to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence, do not militate in favor of a reduced sentence now. An additional factor also now weighs against early release for Garcia, Sr., namely the need to avoid unwarranted sentence disparities. Garcia, Jr. was sentenced to 18 months and served substantially less before his administrative release from prison due to the COVID-19 outbreak.[2] My sentencing determinations reflected a careful analysis of the appropriate sentencing disparity between father and son reflecting their relative culpability and other factors. If released now, Garcia, Sr. would serve only 10 months of his 70-month term. His prison term would no longer reflect a suitable punishment in comparison to that served by Garcia, Jr., and so would be inconsistent with §3553(a)(6). *See United States v. Pawlowski*, 967 F.3d 327, 331 (3rd Cir. 2020) (considering a compassionate release motion, the district court may consider the time remaining in sentence and the need to avoid unwarranted sentencing disparities), and *United States v. Austin*, ___ Fed.Appx. ___, 2020 WL 5201632, at *3 (6th Cir. Sept. 1, 2020) (affirming the denial of a motion under §3582(c)(1)(A) where the prison had no confirmed cases of COVID-19, the defendant had "served only a fraction of his

---

[2] Garcia, Jr. was allowed to self-surrender on or after February 6, 2020. [DE 172.] The Bureau of Prisons Inmate Locator reflects that the BOP has transferred Garcia, Jr. from a federal prison to a residential reentry facility.

sentence," and "less than two years had passed since [the sentencing court] had last weighed the §3553(a) factors.").

The linchpin of a compassionate release under §3582(c)(1)(A) is the defendant's showing that something has changed since his original sentencing, and something so significant as to be both "extraordinary and compelling." The COVID-19 pandemic is extraordinary, no doubt, but it alone cannot justify the emptying of all federal prisons. Instead, it is incumbent on Sergio Garcia, Sr. to demonstrate something extraordinary and compelling about his personal circumstances or the conditions in his place of confinement that, against the backdrop of the COVID-19 pandemic, support the rare and extraordinary step of ordering his release from prison after he has served little more than 10% of his sentence. Having carefully reviewed the briefs and exhibits submitted by the parties, I will deny Garcia's motion for reconsideration. I remain firmly convinced that Sergio Garcia, Sr.'s concerns about contracting the coronavirus and suffering complications if that occurs do not establish the type of extraordinary or compelling reasons that would justify his release from prison under the authority of §3582(c)(1)(A)(i), and that the requested reduction of his sentence is not warranted by consideration of the §3553(a) sentencing factors.

ACCORDINGLY:

Defendant Sergio Garcia, Sr.'s Reconsideration Motion Seeking Compassionate Release under §3582(c)(1)(A) [DE 199] is DENIED.

Garcia, Sr.'s Motion to Seal [DE 200] is GRANTED.

SO ORDERED.

ENTERED: September 21, 2020.

      /s/   Philip P. Simon
UNITED STATES DISTRICT JUDGE