UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:16CR89-PPS |
| | ) | |
| SERGIO GARCIA, SR., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

I have twice denied requests from Sergio Garcia, Sr. for compassionate release from his term of imprisonment, based on the COVID-19 pandemic. [DE 198, 212.] Garcia is now before me with a third request for the same relief. [DE 214.] Garcia is an inmate at Federal Prison Camp Duluth in Hermantown, Minnesota. The principal grounds for his motion to reconsider are a reported outbreak of COVID-19 at the prison and Garcia's characterization of the prison's mismanagement of the situation. The request for relief will again be denied.

First, the government argues that Garcia fails to demonstrate that he has met a threshold requirement of §3582(c)(1)(A)(i), namely the exhaustion of administrative remedies by first petitioning the warden of his facility to bring a motion on his behalf. [DE 232 at 8.] Although this exhaustion requirement may appear to be an unnecessary and even perverse bureaucratic hurdle, it is a statutory curb on my authority to grant compassionate release, and reflects the conclusion of Congress that the warden of each prison should review such requests in the first instance prior to the courts being invited

to weigh in.  A district court correctly denies compassionate release based on an inmate's "failure to present proof that he had satisfied §3582(c)(1)(A)'s exhaustion requirement," which the Seventh Circuit describes as a "mandatory claim-processing rule."  *United States v. Williams*, 529 Fed.Appx. 138, 140 (7th Cir. 2020).

Garcia's motion and supplemental filings make no reference to exhaustion.  In its opposition, the government provides a copy of the warden's April 14, 2020 memo citing 18 U.S.C. §3582(c)(1)(A) and denying Garcia's request for a COVID-based reduction in sentence.  [DE 207-3 at 1.]  The government represents that Garcia "has not reapplied to the BOP for administrative relief since," citing the statement of the Warden Secretary and Administrative Remedy Clerk describing Garcia's administrative appeal of the April 14 decision, which was denied on June 10 and not pursued to the final stage. [DE 232 at 8; DE 207-4 at 1.]   In his reply, Garcia finally addresses administrative exhaustion, claiming that he "exhausted all of his required administrative rights upon the August 13, 2020 denial" of his "BP-10".  [DE 236 at 3.]

Garcia's belated claims of exhaustion are not well-supported.  I don't know what a BP-10 is or what Garcia's consisted of, so I can't conclude that it was a request for relief of the kind contemplated by the §3582(c)(1)(A)(i) exhaustion requirement.  The only exhibit attached in support of Garcia's claim that he has met the exhaustion requirement is a document marked "BP-11" dated September 16, 2020, which appears to reflect an extension of time for a response to the appeal of a "reduction-in-sentence" request.  [DE 236 at 39.]  The document is not self-explanatory, and does not clearly

2

demonstrate that it pertained to an administrative request for compassionate release based on COVID-19 pursuant to §3582(c)(1)(A).  Construing the document generously in Garcia's favor, it indicates that he filed an appeal on August 24, 2020. How this relates to the exhaustion Garcia claims to have achieved as of August 13 is unclear.

      Further muddying the record is Garcia's later claim that "[a]lso, Mr. Garcia applied for compassionate release with the office of the Warden at FPC-Duluth, and after having not received a response in 30 days properly filed his motion seeking compassionate release/sentence reduction with this court."  [DE 236 at 3-4.]  No proof is offered in support of this claim.  And Garcia's language, because of the use of the word "also" and because it describes a *lack of* response in contrast to the denial he says he received on August 13, suggests that the "BP" series of actions Garcia separately describes were *not* the sort of compassionate release request contemplated by §3582(c)(1)(A).

      Reviewing the evidentiary record the parties have amassed on this issue, I cannot conclude that Garcia has exhausted his administrative rights prior to seeking my reconsideration of compassionate release.  My two previous denials of compassionate release were dated May 18, 2020 [DE 198] and September 21, 2020 [DE 212].  Even accepting Garcia's explanation at face value, it is clear that he did not engage in a new round of administrative requests for relief under §3582(c)(1)(A) after my last decision. Failure to exhaust administrative relief before filing his current motion provides a basis for the denial of Garcia's motion for reconsideration.

Even addressing Garcia's request on the merits, however, I am not persuaded to grant it. An important fact is disclosed late in the government's opposition brief: Garcia tested positive for COVID on November 18, 2020. [DE 232 at 14.] This unfortunate development changes the landscape for Garcia's motion, and not necessarily in a way that supports the relief he requests.

Prison records show that Garcia's case of COVID-19 has been relatively mild. The government reports daily medical checks after Garcia tested positive, which show no fever, but reflect symptoms of headache, loss of taste and smell, or fatigue, and one day when Garcia denied any symptoms. [DE 232 at 14-5.] Garcia's oxygen saturation declined over several days in November, but he has not required supplemental oxygen, and the level rose in the days thereafter. [*Id.*; DE 233 at 1.] After a series of days between November 25 and 30 in which Garcia reported no symptoms, he completed 10 days in isolation and was released from isolation and his infection was considered resolved. [DE 233 at 1-2.]

Releasing Garcia now cannot protect him from the virus he has already contracted, and subjects his family and the public outside to potential transmission from him. Once he has recovered, immunity may protect Garcia from a further bout of COVID-19. *See* https://www.nytimes.com/2020/11/17/health/coronavirus-immunity.html (accessed 12/4/20). In his reply, Garcia does not dispute that he has suffered only a very mild case of COVID-19. [DE 236 at 11.] As a result, he has modified his argument from protection against infection to protection against re-

4

infection. [DE 236 at 13.] According to the Centers for Disease Control and Prevention, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited 12/17/2020). Anecdotal information, not scientifically confirmed, about cases of presumptive reinfection involving more severe illness than the initial bout of COVID, are not a compelling basis for granting relief under §3582(c)(1)(A)(i).

Particularly in light of Garcia's infection with only a mild case of COVID-19, his multitude of allegations about prison conditions don't support compassionate release. Without evidence in support, Garcia claims that prison staff "slow-walk paper work allowing those who qualify for release under the CARES Act" and that one staff member has admitted that their union wants to protect BOP jobs by delaying requests for release. [DE 214 at 2.] These unsubstantiated and scurrilous allegations cannot be credited and in any event are not grounds for Garcia's release under the applicable "extraordinary and compelling reasons" standard of 28 U.S.C. §3582(c)(1)(A).

In his motion, Garcia describes the prison's response to the arrival of COVID-19 cases, involving "full lock-down quarantine of multiple inmates in five different holding areas." [*Id*. at 3.] He indicates that "Building #210 continues on quarantine and #211, #207... and the gym remain on full lock-down." [*Id*.] Rather than explain why these measures are inadequate, and not an entirely appropriate response to the outbreak, Garcia suggests that the *existence of the outbreak* demonstrates that "the B.O.P. cannot guard against this disease." [*Id*. at 4.] After his motion but prior to the

5

government's response, Garcia has filed four supplements each labeled "Judicial Notice," in which he makes factual representations criticizing FPC Duluth's response to the pandemic. He alleges, for instance, that "the staff has decided to stop current testing and delay future tests for another week plus" and "has been releasing quarantined inmates out sooner than their posted guidelines." [DE 222 at 1.] Garcia claims that the warden has said he has a plan to create herd immunity, and that staff have said "they have stopped testing inmates because 'they have no place to put them safely.'" [DE 224 at 1.]

In response, the government provides evidence in the form of a sworn declaration from the prison's Health Services Administrator, which explains the measures employed to suppress the transmission of COVID in the facility and how the prison's COVID cases have been handled. [DE 232-1.] The detail of the declaration supports a conclusion that the quarantine plan Garcia refers to disparagingly was reasonably and suitably used in an effort to combat cases of COVID as they arose. [*Id.* at ¶¶17-29.] The government argues that, despite these measures, cases of COVID increased at the prison "largely for the same reason that cases elsewhere have gone up: having grown weary of pandemic-related restrictions, people stopped abiding by them as strictly as they were before, leading to a surge of new cases." [DE 232 at 13.]

This suggestion is supported by the Health Administrator's declaration that, after seeing other inmates recover from COVID with minimal or no symptoms, many became lax about restrictions because they were "increasingly less concerned with

6

contracting the virus." [DE 232-1 at ¶7.] The declaration also reports inmates admitting to medical staff that they have failed to report symptoms associated with COVID, expressing apathy about the spread of the virus. [*Id*.] Garcia may be among those who did not take COVID precautions seriously enough. The prison medical record contains a notation by the Family Nurse Practitioner that in connection with his positive COVID test, Garcia indicated "his roommate had symptoms days before being tested but the roommate nor Garcia reported it to medical." [DE 232-2 at 1.]

In his reply, Garcia persists in his claims that FPC-Duluth is mishandling the COVID epidemic and disputes aspects of the Health Administrator's declaration. For instance, Garcia claims that the BOP medical staff has not checked on him since November 27, 2020 [DE 236 at 16], despite the prison medical records submitted by the government on December 2, reflecting checks of Garcia's temperature, pulse, oxygen saturation and reported symptoms on November 28, 29, and 30. [DE 233-1 at 2.] Even if Garcia's claim of neglect is credited over the prison records, Garcia does not contend that his infection has been severe or required treatment he did not receive.

Garcia's motion ultimately does not required me to make a judgment about FPC-Duluth's handling of COVID-19. No specialized knowledge of epidemiology is required to understand that the management of a highly infectious disease with an incubation period of up to 14 days and the possibility of entirely asymptomatic carriers poses an enormous challenge for the Bureau of Prisons. Prison facilities are not designed for social distancing and the BOP's ability to control inmate behavior so as to

reduce transmission is extremely limited.  Whatever disputes of fact may exist in this record concerning how FPC Duluth has managed the pandemic, at this juncture those disputes are not material to my decision.  Even if all of Garcia's allegations about dangerous conditions at the prison are true, I would not grant his motion.  Garcia has already contracted the virus, but reportedly is faring well.

The  COVID-19 pandemic is a scourge that has imposed great hardship and suffering on millions of people across the world.  But it does not warrant the wholesale emptying of all prisons and jails.  The special authority granted to sentencing judges by the recent amendment to §3582(c)(1)(A) is quite narrow, and understandably so, because it comes at the cost of truncating the carefully measured term of imprisonment previously imposed, at the expense of all the sentencing factors and goals weighed in determining that sentence.  There are many facts and factors about the COVID-19 pandemic that can justly be called "extraordinary and compelling."  But the risk of infection, or even an actual infection with the virus, is not necessarily enough to meet that standard given the prevalence of the coronavirus generally at this time.

The risks Garcia now faces with respect to COVID-19 are not shown at this point to present "extraordinary and compelling reasons" warranting a reduction in his sentence.  This conclusion also represents the weight I give to the sentencing factors set forth in §3553(a). Garcia presided over a complex mail fraud conspiracy that spanned years, involved hundreds of fraudulent documents and spurious liens placed on 87 different real properties, victimized the Department of Housing and Urban

Development and many individuals, and caused a loss of between $500,000 and $1 million. At Garcia's sentencing I described the scheme as "a rampant fraud," involving a "day in, day out, drum beat of fraudulent behavior for a three- or four-year span of time." [DE 165 at 26.] The crime was an extremely serious one, as reflected in the sentence of 70 months' imprisonment. Garcia's projected release date is in December 2024, and his release now would reduce his imprisonment by four years. In my view, such a shortened term of imprisonment would not be sufficient to serve the statutory purposes of reflecting the seriousness of Garcia's offense, promoting respect for the law, providing a just punishment for the offense, and affording adequate deterrence to criminal conduct by others or by Garcia himself.

The request for reconsideration will be denied. Garcia has not presented proof that he satisfied the exhaustion requirement of §3582(c)(1)(A). In addition, I remain unpersuaded, after considering the sentencing factors of §3553(a), that Garcia demonstrates extraordinary and compelling reasons that warrant a reduction of his sentence.

ACCORDINGLY:

Defendant Sergio Garcia, Sr.'s Request for Reconsideration of Compassionate Release Decision [DE 214] is DENIED.

SO ORDERED.

ENTERED: December 21, 2020.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE